May it please the court, my name is Jerry Geiger, I represent the appellants Sotball and Heather Dry, and I'd like to reserve two minutes for rebuttal, if I may. This is a case against, it's actually an appeal from a summary judgment ruling that was against, ruled against defendants Sotball and Heather Dry. They're both involved with Monroe County Children and Youth Services. I think we understand the facts in this case, and I guess my first question would be, do you need absolute, let's assume that you have a good argument here, do you need absolute immunity in this case, or is qualified immunity sufficient to protect the function of both the case worker and the supervisor? Well, the reason we, I think the absolute immunity argument is a stronger issue for us. Really? Actually, I do, because I think that contrary to what the lower court said, really what we are being faulted for is our role in the prosecution of the dependency petition. Specifically, if you look at what happened was on a Friday, custody was taken, my case worker, Heather Dry, submitted all the paperwork to the solicitor on that Monday, and what really what we're being blamed for... And almost used up the 72 hours. And that was, well, it would have been, late on Monday would have been 72 hours, because they did it late in the day on a Friday. And the courthouse was closed. Courthouse is closed, and I am pleased to be able to tell you that I have spoken to this particular judge, and the courthouse is now open on weekends for these matters now. So that's not going to happen again. But the fact was that within the 72-hour period, Ms. Dry sent all of the paperwork to the children and youth solicitor, and the solicitor actually filed it on the fourth day, after the 72 hours expired. Judge Worthington then signed her orders, causing an additional delay of another two days before there was a hearing. And so what we're being faulted for is either failing to file sooner, or once we get the court order from Judge Worthington, not filing something with her saying that, Judge, you're wrong. We need a hearing. But it was already 70. We were already beyond the 72 hours at that point. That's right. Let me ask you this. Can we distinguish between the initial action of CYS, which is whether to file a complaint? I think it's pretty clear that that is entitled to absolute immunity. Can we distinguish between that act, which is akin to a prosecutorial action, let's say by the district attorney, from any action subsequent to that point, such as allegedly failing to get an earlier hearing? Or are they all part and parcel of the same action? I think the plaintiffs have characterized it as still a prosecutorial issue because we didn't do anything with the judge to have that changed. But I agree with you that there's also that qualified immunity component because, really, neither Drine nor Ball were attorneys. We were not filing these matters on our own. The court sets the schedule, I take it. The court sets the schedule. And then it's up to us. I mean, looking at what is reasonable for these caseworkers to do. Doesn't all that cut against your absolute immunity argument, though? It, on the qualified, on the second portion, once the petition is filed, it's less an absolute immunity issue and more of a qualified immunity issue from that point. Well, what specific conduct? I'm having a little trouble, in addition, having a little trouble speaking. But I'm having more trouble trying to figure out what the facts are in this case that you're looking for us to apply an absolute immunity analysis to. Okay. What would you say is entitled to absolute immunity? The non-filing of the petition within the 72-hour period, I think, is really the focus of that. Isn't that the hearing? But there's no, what, when the petition is filed. It's not filing something that gets the hearing within 72 hours. You mean not pushing the judge to hold it for 72 hours? Correct. That's right. Because really, that's what the- As I understand, you can correct me and your colleague can, nobody is complaining about filing the petition. Is that, I mean, am I right on that? Well, the petition was filed after 72 hours. Pardon? The petition was filed after 72 hours. It was filed on the fourth day. Wait a minute. No, no. No. Maybe it's taking the child, taking the children, I guess. The initial, yeah, maybe that's, I'm sorry. No, go ahead, no, no, go ahead. You're talking about, oh, you mean the petition that was filed by the assistant county solicitor? Yes. That was filed after the 72 hours? That was filed in four days after. And she didn't get it, but she didn't get it until Monday. She didn't get the information. She didn't get the request. That's right. Until Monday. That's correct. That's right. But she did get it within the 72 hours. Barely. Well, that morning, Monday morning, and then the petition, it would have had to be filed by 430 on Monday. Well, I had the same problem as Judge Fischer, maybe Judge Slover, too. I'm trying to figure out, I'm trying to pin down what it is the plaintiff claims should have been done here. The only thing that I can see is that your people are being faulted for not going to the court on Monday and saying, this hearing has to be held before the close of business on Monday. Yes. Is that? Yes. That's it. And then once the 72 hours pass, my reading of their claim is that as time was ticking, when the deadline had already passed, we needed to do more to make sure that we got a hearing more promptly than we did. But it's not under your control. It's not under our control. But the district court judge said that Mr. Ball, for example, he made no effort to expedite the hearing, and that's why summary judgment was denied for him. And what were we supposed to tell Judge Worthington? Now, we had the, I suppose we could have said, we will lease the children, but then we'd be violating her order, which says you take the children. In Monroe County, do you have one judge that's assigned to this matter at a time? At that time, it was one judge assigned to these matters. It was Judge Worthington. Yeah, and how big is the court in Monroe County? Right now, it's six judges. In 2003, I think it was five. I have a factual question that's not clear to me. There was some determination made, and I think it was on January 28th, that the children's natural father did not abuse them. Yes. Who made that determination? Children and youth did. And when was it communicated to any, to whom was it communicated? It was communicated to the parents, and I believe Mr. Cohen, who was representing the parents, or representing Angela Bear, excuse me. And so what happened, the whole reason for detaining them was concern that the father would abuse them. That was not the only reason. If you look at Heather Dry's affidavit in the district court record, there were serial complaints made by Angela Bear accusing, or talking, not only accusing the natural father of sexual abuse, but there are all sorts of behavioral issues where the, in fact, there was a psychiatrist for children and youth that suggested inpatient counseling of these children because they were acting out in very strange ways. And the concern was with the caseworker that they were, that the children were being pawns in the middle of a custody dispute between Gabriel Zaney, the natural father, and Angela Bear, the mother. And because Mrs. Bear would call up and say, the kids were just there on the weekend,  and then they would, then there was a claim about the children being touched in inappropriate ways, and then she would call back. That would be sexual abuse. Yes, but then she would call back and say, no, the children recanted their testimony. And it was like, first the claim was made, then they would be recanted, and it was over and over again each time the claim was recanted. Well, when the children, when the court made the order to, after the six day later hearing, to hold the children in protective custody, I guess, whatever is the word, what was the reason given on that order? There was a, actually, if you look at the record, in fact, the quote in my brief on the colloquy of what the judge was telling Angela Bear, before she agreed to actually have the children in the custody, was that it was important to have the children evaluated for their mental status. And not just because there might have been a threat from the natural father, but because there was a concern, why are they making claims of sexual abuse and then recanting them? Are the children being unduly influenced by the Bears? Are they in the middle of a custody battle between the parents? And, you know, why are they acting out in this particular manner? And so it was specifically decided the judge was going to appoint a mental health counselor, a psychiatrist, to evaluate the children, and that there was going to be no contact during the entire period so that there could be no influence by the Bears on these particular children. By the Bears, rather than by the father. Well, and the father, too, but the natural father. I'm trying to figure out whether the January 28th date is a date of significance. We think it's not, because the children and youth determined that the allegations against the natural father were unfounded. But the judge said, we're gonna get to the bottom of this, you can't keep making these allegations and then recant them. So we want these children evaluated. The judge? Not after the January 28th, but at the initial hearing on January 16th, the judge decided that it was important to have the children evaluated and placed in an area where they would not have influence by any of the parents. Did the judge know about the January 28th finding? Determination? I don't know. I'm not sure about that. I think it's unlikely that she knew of it until the final hearing, because I don't think that was brought to the court's attention in any kind of a pleading. I think my questions really go to your friend on the other side. Mr. Geiger, does the Supreme Court's decision in Van de Kamp v. Goldstein help you at all on the absolute immunity question? I wish I had that case in front of me, then I would tell you if they did. I don't know. Not familiar with it? No, sorry. So I can't answer the question, unfortunately. I do want to point out, though, that there were a couple of what I believe are misstatements in the appellee's brief that I think need to be brought out. And one is that there was this claim that the police somehow signed this blank order allowing us to take custody. That's not in the record anywhere. In fact, if you look at document 162 in the district court record, Detective Robson was present, along with two other police officers, to be present for an interview with these children. It was the police that signed the order, taking the children into custody on that Friday. And then it was our obligation to then move forward with the filing of the petition, which we didn't do as fast as we could have. Let me understand your legal position. You say that absolute immunity is a stronger position for you. But if we don't buy the absolute immunity, you're not saying you wouldn't take qualified immunity, are you? I would happily take qualified immunity. Okay. I see my time is up, but yes. Mr. Geiger, thank you very much. Mr. Loftus. May I please the court? My name is Peter Loftus. I am the attorney for the appellees in this particular matter. Obviously, I disagree with everything that has been said. Not everything. Well, most everything, Your Honor. First off, there's no absolute immunity in this case. That's because of the fact that the actions of the appellants were investigatory and administrative. They took the children. They didn't adhere to the law in giving a 24-hour notice. They failed to do that. They then did not go forward and have a hearing in 72 hours. Well, since when do caseworkers schedule hearings? Your Honor, the caseworkers are the ones who have to initiate it and contact the judge if nobody else is available. Is that in the record? That is not in the record. How can we make a decision without that fact being in the record?  In the interest of MB, in October of 2002, faulted Ball and Dry and Monroe County for not complying with the law concerning the fact that a judge had to be on call 24 hours a day, seven days a week. And that particular law is 23 Pennsylvania CSA 6315 b. That is a requirement. Okay, but notwithstanding that, what responsibility would the caseworker have had to have scheduled the hearing? I submit, Your Honor, that the caseworker is the moving party who, having taken those children, has a responsibility to ensure that a hearing is prompt in accordance with the law for which they had been cited by the Pennsylvania Supreme Court, which they did not do. It could have very simply been, at the time the children were taken, the CYS is directly across the street from the courthouse, walk across the street and walk in on the judge and say, Judge, we have to have a hearing because we just took this child, the children, actually, in this particular case. Wasn't this filed after the close of business on Friday afternoon? The children were taken down to CYS prior to the close of business. If there was an intent to take these children, number one, they should have gotten the authority of the court to take them, which they did not do. It wasn't an emergency situation because the biological father was coming in either that night or the following day. Well, can you say that for sure, that it was not an emergency situation? It's not an emergency situation when they're in the custody of the bears and the only thing they had to do was get a PFA to protect the children. They could have done that at a magistrate's office. But the father was coming. When was the natural father coming to pick up the children? He was supposed to come Friday night. This is a situation where a PFA can be picked up in 15 minutes at any magistrate's office. And to be honest with you, this is the only county that I know of in northeastern Pennsylvania that doesn't have a judge on duty 24-7. Even Wyoming County, Susquehanna County, which are one-judge counties, their judges respond in 24 hours. Did Angela Bayer make any effort to ask the court to schedule the hearing earlier? Angela Bayer ended up getting an attorney. And the attorney, they allege, did not properly represent them. At the hearing on the 16th... Is the answer no, that nobody, either she or anyone on her behalf, asked the court to schedule the hearing earlier than that Thursday? They contacted Mr. Ball and advised him that he was in violation of 72 hours and that the 72 hours should be adhered to. Okay, now what harm happened that it didn't, the hearing didn't take place in 72 hours when the court then said they would remain in protective custody or under some kind of other supervision for 41 days? I mean, they don't complain. What surprises me about this case is that there's no complaint about the longer period of time. And the complaint is about the shorter period of time. The complaint is also about the longer period of time, but that was not the... I don't see that in the brief. That was not the issue addressed by the judge, Judge Caputo. So that wasn't briefed as far as that was concerned. Angela Bayer is the one who's bringing this case, claiming that the hearing was scheduled beyond 42 hours. And then there's this whole longer period. All of the alleged harm, it seems to me, the different doctors, et cetera, during that period took place not in that shorter period, but in the longer period. Was there any effort to get the children back sooner? Your Honor, there was continuous effort to get the children back. There were protests outside the courthouse and there were continuous efforts that the children were taken improperly. Not what happened outside, what happened inside. What was filed to try to move the children back earlier? Unfortunately, at the hearing, which Judge Worthington has identified as a very brief hearing, which absolutely no testimony was taken from the appellees herein, who had a list of witnesses to be sworn and testified, which list is included in the back of my brief. The judge announced from the bench that the parties had agreed that the children could be taken. I read that transcript and the judge was very clear and Angela agreed to all of those things. No. She said, yes, yes, I understand. Angela did not agree. When she found out that the children were being taken, her attorney was immediately fired in the courtroom. Fired her in the courtroom. And her husband has put in his affidavit that he heard her say, no, I do not agree with the taking of the children. And that's set forth in our brief. Well, I'm looking at pages six and seven of the blue brief, which is the appellant's brief. Are you represented by count? Do you understand that there will be an ongoing? I don't want to repeat it. Psychological evaluation. Yes. And he says yes. And you'll both be signing the leases. You understand I'm requesting her to give me some insight. And she says yes. Do you understand that, Mrs. Bayer? Yes. Are you both in agreement with the terms of that stipulation? And she says yes. Yes. I know you say in your brief that she was under duress, but where is that on the record? The fact is that what she was agreeing there to was not that the children would be kept in custody. Those conditions could have been met while the children were with Mrs. Bayer. In fact, they were subsequently met when the children were with Mrs. Bayer. In the affidavit, which was filed in the summary judgment motion and is also contained as part of the record, Mr. Bayer clearly pointed out that she did not agree with them being taken out of her custody and stated so. On page six, the court says, and you each are represented by counsel in this case who have explained to you what that means, which is that they will remain in foster care setting until their evaluations are completed and that the agency will not be providing any type of visitation with either of you during that period of time. Do you understand that, Mrs. Bayer? Yes. And she promptly fired her attorney, Mr. Cohen, for having agreed to that out of her presence and hadn't discussed it with her prior to that. But the court asked her, not the attorney, and she said yes. Judge, let's face it. People do not come into court every day and are not familiar with what goes on. And she was totally under duress at this point and has brought that out. She is a foreign national who came to this country and is now a citizen, but she doesn't understand everything that goes on in our courts. And she got, unfortunately, misrepresented by an attorney whom she fired in the courtroom because of that. Is it the representations that Mr. Geiger made of serial complaints and then recantations, if that's accurate, it would seem to show that she did have some familiar with the court system. Is that a fair assessment or not? She had made complaints to CYS, yes. Not the court, but CYS. And so she was familiar with CYS and she was involved in a situation not with custody, but on visitation with the children by Mr. Zanny, who was alleged to have abused them sexually. And they would come back from the visits and would be terribly upset. These kids are now suffering from severe post-traumatic stress disorder and other ailments because of the fact that they were moved from seven different foster homes, given to doctors who had no knowledge of what their medical condition was and misdiagnosed them and mistreated them with prescriptions. Now the question was, yes, 41 days. That's where the injuries took place. But if this hearing had been held promptly and they've given the opportunity to actually go through a hearing, she would have been able to present her list of witnesses who included psychiatrists and who would have testified as to what the situation was. This was denied them. Granted, it wasn't done in 72 hours like it should have been. But if it was granted in 72 hours and these witnesses had been allowed to testify, there would have been a different outcome. No, but the thing that I don't understand is instead of having the hearing on Monday, there was a hearing on Thursday. So there was a hearing before a judge at that point. These matters were not raised at that time. Judge, not having been involved in the case at that time, I cannot answer that question as to why they were not. I do know that they initiated a lawsuit against Mr. Cohen and had fired him right on that spot because of the misrepresentations and handling of the case before the judge. This is a situation where the CYS should have at the very least gone in there on Monday morning and said, Judge, we haven't gotten a notice from you giving us clearance in 24 hours to retain these kids. And we certainly need a hearing within the 72 hours, which means today. Because otherwise, these kids are going through all sorts of problems. And it was recognized then that these kids were having problems and were having psychological problems. And to be separated from their mother severely deprived them of the family care that they required. And if I read your brief correctly and tell me if I'm wrong. Your position is that a petition. Or the action to to take custody on Friday afternoon should not have taken place unless the caseworker and her supervisor could have guaranteed a hearing within 72 hours. That's correct. Am I correct? That's correct. OK. Plus the fact they failed to get a 24 hour acceptance of the detention by the court, which is also part of the 23 PSA 631. And is it undisputed that that the court was not set up to have hearings on Sundays? Yes, that is disputed. Because it is the law of the state. No, I'm not saying that you're wrong on the law. Was there a mechanism to get a hearing in Monroe County on Saturday and Sunday? Judge, I submit that that wasn't a very appropriate answer to come up with that they don't have somebody who's available. Isn't there a historical record? On that as to whether hearings are granted. Somebody said that the hearings are not granted. Was there any evidence to show that they are? Or there's no evidence that shows that that is an incorrect statement. It isn't important that the judge be the one who had the hearing. The law specifically states that it's an informal hearing before a judge or a master. They have masters. I've been in front of a master on child custody matters up there. So I know they have masters. And there's no reason why they could not have put somebody out in 24 hours and had them available to do all the things necessary that is required by the law for which they were faulted in October of 2002 in Ray the interest of MB by the Pennsylvania Supreme Court. Who has the legal duty to do that? Where does the duty lie to set the hearing date? It's in the law. It's in both. I mean, with what? With whom? Or who has that duty? Is it the judge? Well, it's in... I mean, ordinarily, I would think it would be the judge has that duty. Well, I think it behooves the caseworker to get on the judge or to get on the attorney who represents them and say, hey, this is the law. We have to comply with it. It's not one law. It is two laws. You have not only the Child Protective Act, which is 23, but you also have the Juvenile Detention Act, which is 42 Pennsylvania CSA. Is it clearly established law that if the... that it's the caseworker's responsibility? I mean, has this court or has the Pennsylvania Supreme Court said that? No, it is not clearly established law. And that's something that this court may want to consider, that it should be clearly established law and that the caseworker who takes the children and doesn't follow the prescribed laws should be held to move forward and initiate some sort of action with the court. Are we talking about a Pennsylvania statute or due process? We're talking about both. We're talking about Pennsylvania statutes, two of them, which are statutory and also constitutional requirements that should have been adhered to, which eliminates the qualified immunity as well as the absolute immunity. That these people are liable for that as well. Is it your position that the United States... Is it your position that the United States Constitution requires that a hearing be held in 72 hours from the time? There's nothing in the Constitution which requires a 72-hour time frame. Obviously, what is required is that something be reasonable and that reasonableness has been established by the Pennsylvania legislature, which established 72 hours. And I might point out that these child protective laws, as well as the juvenile laws, have been formulated with the assistance of the Pennsylvania Supreme Court. And I don't think this court can overlook the case filed by the Pennsylvania Supreme Court, INRAE-MB, which was October of 2002. Could you give us that citation? Yes, I did. And I can give it to you right now. I'm looking in your brief now. I see an INRAE-RM, but I don't see an INRAE-MB. Your Honor, it's 567 Pennsylvania 646. Thank you very much. You're welcome. Thank you, Mr. Luff. Just let me ask one other question. I think you said in answer to Judge Sloater's question that the responsibility of the caseworker was not clearly established. I don't think that has been set out specifically in the law. OK. If it's not specifically set out that that's the caseworker's responsibility, why wouldn't the defendants who are remaining in this lawsuit not be entitled to qualified immunity? Because the court, Pennsylvania Supreme Court, in the case I just cited, found them to have been in dereliction of that law specifically. And I request that the court read that very carefully because they found them in dereliction of almost the entire law, the only exception being paragraph small a in the parentheses. They found them liable for B, C, D... When you say them, who do you mean? C, Y, S. Monroe County and Mr. Ball. What about Ms. Dry? I don't believe Ms. Dry was included in that case. But obviously, since Mr. Ball was her supervisor, that that would have been passed on down to them. That was a very, very important case. Thank you, Mr. Loftus. Thank you, Your Honor. I think when Mr. Loftus answered it's not clearly established law, that means I win on qualified immunity. I don't see a way around that. I think what he's making a differentiation between is what state law requires in terms of 72 hours and whether that's a federal constitutional violation. And my understanding is that this court has not adopted a rule that says that there is this bright line 72-hour rule. There is case law in the district courts. The Patterson case was cited in the Western District that did say that federal constitutional rights would implicate anything beyond 72 hours. But this court has not said anything on that. So I think if we take his answer as given, then I should win on the qualified immunity argument. One question was asked about whether- Your client should win. Yes, yes, yes, correct. One question was asked about why aren't plaintiffs fighting the period of time between January 16 and February 20. They did do that, but the judge rejected that claim on the Rooker-Feldman theory because they never- The federal judge. No, yes, the federal judge. Oh, yeah. He held that what they were trying to do by challenging that portion of the detention, so to speak, was really a constructive attempt to appeal the lower court's ruling. Judge Worthington held that the children were kept appropriately during that period of time and it was based on consent and it's clearly in the transcript, despite what Mr. Loftus tries to argue, that Angela Baer agreed with this. There's also evidence in the record that Mr. Cohen, who was representing Angela Baer, kept calling children and youth and asking, why aren't you taking these kids? We're concerned about their safety. Now, they may not like him after the fact, but that's what was going on up until the point when the children were taken. What about the claim that is made in the briefs that Mrs. Baer was operating under duress because Mr. Bale allegedly stated that I have the children now and I'll keep them and that you won't get them back for over a year if you complain or something? There are those allegations. I know she made those allegations, but she also said that, I never really said to the trial court judge that I agreed to this and yet, unless there's a conspiracy with the court reporter, she did. She was represented by multiple lawyers. The children were represented. I had special appointed counsel and they were advocating to keep the children until February 20 for their own safety. And what was the alleged danger to the children? The danger was that- I mean, once you get past the molestation charge, which is knocked out, I think, on January 28th. That's right. What's the alleged danger? The concern was that they were being mentally abused by the Baers Angela Baer and Bruce Baer. Rather than the zany. Yes, yes. And the judge had made a comment at the hearing, we have to get to the bottom of this, why all of these claims, why all these phone calls to children and youth about all these horrible descriptions of abuse and then recanting them either later in the same day or the following day. Something was serious was going on at that point. Do we have something in the record? I must confirm. I mean, I thought I read this carefully about this recantation claim and recantation. Yes, it's in Heather Dry's affidavit, which begins on the record at page 231. The appendix. I mean, the appendix. Yes. Also, I do want you to know that the in terms of the court being open, the the affidavit of Heather Dry also at that point says that the court is not open on the weekends and there was no contrary evidence submitted on that. I think I've run out of time. Thank you for your consideration. Thank you, Mr. Geyer. Thank both counsel for excellent argument. We will take this matter under advisement.